## THE BOARD OF COMMISSIONERS OF HARRISON COUNTY *v.* BYRNE.

NEW TRIAL.—*Assignment of Error.—Supreme Court.— Waiver.*—Where an assignment of error in the Supreme Court alleges that "the court below erred in not granting a new trial for " a reason stated both in the assignment of error and in the motion for a new trial, it brings in review such ground only, though others be stated in such motion.

BRIDGES, ERECTION OF.—*Superintendent.—Agency.—Contract.—Extra Work.* —*Board of Commissioners.*—Under the provisions of the act for the erection and repair of bridges, etc., 1 R. S. 1876, p. 239, the superintendent appointed by the board of commissioners has power to let contracts for the construction of bridges, and to superintend the work; this makes him the agent of the county for the purpose of the construction of the bridge or bridges, and he may bind the county by requiring work to be done beyond that contemplated by the contract.

SAME.—*Measure of Damages for Extra Work.*—In such case, where the extra work, required by the superintendent to be done, prolongs the time necessary to the completion of the bridge into a season when the work is more difficult to perform, and when the material required is not so easily procured as that contemplated by the contract, an increased rate of compensation may be allowed for such extra work.

SAME.—*Instruction.—Excessive Damages.*—The measure of damages in such case should be settled by an instruction to the jury, and not be raised for the first time by a motion for a new trial, based on the ground of excessive damages.

From the Harrison Circuit Court.

*W. A. Porter, B. P. Douglass* and *S. M. Stockslager,* for appellant.

*W. N. Tracewell, R. J. Tracewell, G. W. C. Self,* —— *Jones* and —— *Wright,* for appellee.

WORDEN, C. J.—Action by the appellee, against the appellant, for work and labor, and materials furnished, in the construction of a bridge. Issue, trial, verdict and judgment for the plaintiff.

The appellant has assigned the following errors:

"1st. The court below erred in not granting a new trial to the appellant, for the reason assigned that the evidence did not sustain the verdict of the jury;

"2d. The court below erred in not granting a new trial to the appellant, for the reason assigned that the verdict of the jury was contrary to the law applicable to the case;

"3d. The court below erred in not granting a new trial to the appellant, for the reason assigned that the damages assessed by the jury were excessive."

Had there been a general assignment that the court erred

in not granting a new trial, or in overruling the motion therefor, it would have brought in review here all the reasons stated in the motion for a new trial.  But the special limited assignment before us brings in review only the grounds for a new trial mentioned in it.  It excludes the idea that error was committed in not granting a new trial for any other reasons than those specified, though other reasons may have been stated in the motion.  For an analogous case, see *The State* v. *Bowers*, 14 Ind. 195.

The appellant being about to erect a bridge across a stream, advertisements were published for bids, and the appellee put in a bid for the construction of the pier, abutments, wing wall, and filling of approaches to the bridge, and the work bid for by him was awarded to him, and he gave a bond for the performance of it.  The work was to be completed on or before October 16th, 1876.

The board appointed a superintendent of the work ; and there was evidence tending to show that after the contract had been let, the superintendent required the work to be done in a way that required more mason work, and possibly more filling, than was contemplated by the original contract; and this action was brought, in part at least, to recover for the extra work thus done.  We can not say that the extra work was not judiciously and properly required.

The counsel for the appellant, as we understand their brief, assume that the extra work was voluntary, and that no action will lie therefor ; and that the county could only bind itself by contract made by the board while in session.  And they cite upon this point the case of *The Board of Commissioners of Cass County* v. *Ross*, 46 Ind. 404.

This makes it necessary to inquire into the powers and duties of the superintendent.  In the act to provide for the erection and repair of bridges, etc., 1 R. S. 1876, p. 239, are found the following provisions:

" Sec. 4.  For the erection of any such bridge the said

board may appoint one or more discreet persons as superintendents thereof.

" SEC. 5. Such superintendents may be allowed a suitable compensation for their services, and shall take an oath faithfully to discharge their duties as such.

" SEC. 6. Such superintendents, after having given thirty days' notice thereof, by posting up notices in three public places of the township in which such bridge is to be erected, or by publication in a newspaper of such county, shall receive sealed proposals for the erection of such bridge or bridges, shall let the same to the lowest responsible bidder, and shall require the constructor to give bond and surety for the due performance of his contract."

It is thus seen that the superintendent has power to let contracts for the construction of bridges, and to superintend the work.

We think this makes the superintendent the agent of the county for the purpose of the construction of the bridge or bridges, and that he may bind the county by requiring work to be done beyond that contemplated by the contract. Such authority in the superintendent is necessary for the county, in order that the structure may turn out to be substantial and lasting; and it is proper, in order that the contractor required to perform the extra work may have a remedy therefor. If it should be foreseen by the superintendent, after the letting of the contract, that the work, performed as contemplated by it, would be insufficient or defective, the county might be greatly the loser, if he could not require such additional work as would make it substantial and permanent, and bind the county therefor.

We can not say that the verdict was contrary to the evidence, and we do not think it was contrary to law.

In regard to the damages, it may be observed, that it would seem, from the amount found for the plaintiff, that the jury allowed him more for the extra work than was

provided by the contract for the like kind of work. It may be, that the measure of damages in such case should have been settled by an instruction to the jury, and not raised for the first time on a motion for a new trial. But we will consider the question involved.

*Prima facie,* the contract price for the like kind of work ought to govern for the extra work. See 2 Parsons Contracts, 58.

But there may be circumstances that would render this rule highly inequitable. We have seen that the work originally contracted for was to be done on or before October 16th, 1876. The contract was entered into in August, 1876. Thus, the appellee had the favorable season of the year in which to perform the work, and he could regulate his bid accordingly. There was evidence tending to show that the extra work prolonged the time necessary to its completion into the winter, when the ground was frozen, and when it was more difficult to perform, and when its performance was worth more than it would have been, had it been done at the time contemplated by the contract. There was also evidence tending to show that the stone required for the extra work was more difficult of procurement than that required for the amount of masonry contemplated by the contract.

Under the circumstances, we are not inclined to disturb the verdict of the jury on the ground that the damages were excessive.

The judgment below is affirmed, with costs.